IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHIRLEY J. ROBINSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 10-4115-KHV |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Shirley J. Robinson appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. For the reasons set forth below, the Court reverses the Commissioner's final decision and remands the case for further proceedings consistent with this order.

**Procedural Background**

On May 17, 1999, plaintiff filed an application for Social Security Disability Income with the Social Security Administration ("SSA") asserting disability due to chronic asthma. Certification Of Transcript Of Proceedings Before The Social Security Administration (Doc. # 10), Ex. 1, filed December 30, 2010 ("Tr.") at 100. On August 27, 1999, the Commissioner found plaintiff disabled as of October 1, 1998. Id. at 29, 38, 41-42. On March 21, 2003, the Commissioner notified plaintiff that a Continuing Disability Review determined that she was no longer disabled as of March 1, 2003. Id. at 29, 52-53. On October 31, 2003, a Disability Hearing Officer upheld the decision. Id. at 51-66. On February 24, 2006, Administrative Law Judge ("ALJ") Marsha Stroup agreed. Id. at 29-37. On March 8, 2007, the SSA Appeals Council denied plaintiff's request for review. Id. at 10-12.

On May 9, 2007, plaintiff filed a civil action in this Court challenging the Commissioner's final cessation of benefits decision. See Robinson v. Astrue, No. 07-2196-JWL (D. Kan.). On May 21, 2008, U.S. District Judge John W. Lungstrum adopted the Report And Recommendation of U.S. Magistrate Judge John T. Reid reversing the ALJ decision and remanding based on the erroneous ALJ analysis of plaintiff's residual functional capacity ("RFC"). Order (Doc. #13 in 07-2196); Judgment In A Civil Case (Doc. #14 in 07-2196).

On remand, the Appeals Council vacated the Commissioner's final decision and sent the case back to an ALJ for further proceedings. Tr. at 1008. On May 21, 2009, ALJ Christine A. Cooke upheld the cessation of benefits determination, finding that plaintiff's disability ended as of March 1, 2003. Id. at 951-57. Though it modified one aspect of the ALJ decision, the Appeals Council agreed. Id. at 728-31. On September 16, 2010, plaintiff appealed to this Court from the Appeals Council's decision, which stands as the Commissioner's final decision.

**Facts**

The following is a brief summary of the evidence presented to the ALJ.

Plaintiff is 55 years old. She graduated from high school and earned an associate's degree in science from Donnelly College. Plaintiff started nursing school but dropped out due to her medical condition. Plaintiff previously worked as a certified nurse's aide and as a recovery teacher.

The ALJ held hearings on December 23, 2008 and March 24, 2009 at which plaintiff was represented by counsel. At the hearings, the ALJ heard testimony from plaintiff; plaintiff's lawyer at the time, Kenneth Chambers; vocational experts Marianne Lumpe and Denise Waddell; and medical expert Dr. Stephen Nathan.

In a decision dated May 21, 2009, the ALJ concluded as follows:

1. The most recent favorable medical decision finding that claimant was disabled is the determination dated August 27, 1999. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, claimant had the following medically determinable impairment: Asthma. This impairment was found to meet Section 3.03B of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d)).

3. Claimant did engage in substantial gainful activity prior to the initial cessation of benefits. Claimant's earnings record in Exhibit 70, Page 6, shows reported earnings of $11,400.50 in 2001 while claimant worked for the Unified School District No. 500.

4. The medical evidence establishes that claimant did not develop any additional impairment after the CPD through March 1, 2003. Thus, claimant continued to have the same impairment that she had at the time of the CPD.

5. Medical improvement occurred as of March 1, 2003 (20 CFR § 404.1594(b)(l)).

6. The medical improvement is related to the ability to work because, as of March 1, 2003, claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing that was met at the time of the CPD (20 CFR § 404.1594(c)(3)(1)).

7. As of March 1, 2003, claimant's impairment was severe (20 CFR § 404.1594(t)(6)).

8. After careful consideration of the entire record, the undersigned finds that, as of March 1, 2003, claimant had the residual functional capacity to lift or carry a maximum of 20 pounds on an occasional basis and 10 pounds frequently. She could sit, stand, or walk for 6 of 8 hours. She could occasionally climb stairs or ramps and could occasional [sic] balance. She could never climb ladders, ropes, scaffolds, kneel, crouch, or crawl. Claimant could never work in extremes of cold or heat; around wetness; humidity; fumes; odors, dust and other airborne irritants; or around hazards, such as dangerous machinery or unprotected heights. She could occasionally climb stairs, ramps and balance.

9. Beginning on March 1, 2003, claimant has been capable of performing past relevant work as a teaching assistant as that job is generally performed. This work has not required the performance of work-related activities precluded by claimant's residual functional capacity (20 CFR § 404.1565).

      10.    Claimant's disability ended as of March 1, 2003 (20 CFR § 404.1594(t)(7)). Tr. at 953-57.

In reaching her decision, the ALJ held that plaintiff's congestive heart failure, obesity, degenerative joint disease and gastroesophageal reflux disease ("GERD") did not result in any significant functional limitations and did not constitute severe impairments. Id. at 954. The ALJ relied on the testimony of Dr. Nathan, a pulmonologist who reviewed plaintiff's medical records, to conclude that plaintiff's asthma was under good control. Id. at 955. To determine plaintiff's RFC, the ALJ relied on the RFC assessment of Dr. Kim, a reviewing physician. Id. at 956. Dr. Kim's RFC assessment stated that plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; sit, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; and push and/or pull without restriction, except for the limitations on lifting and/or carrying. Id. at 439.

The ALJ rejected the RFC assessment by plaintiff's treating physician, Dr. Jasper Fullard, because the assessment was dated December 10, 2008, roughly five years after the Commissioner's cessation determination, and because the assessment states that Dr. Fullard first treated plaintiff in January of 2004, nearly one year after the cessation determination. Id. Dr. Fullard's RFC assessment was based on his personal knowledge of plaintiff's medical history. Id. at 1048. It concluded that plaintiff's ability to deal with work related stress was markedly limited; that she could sit upright in a work position for 15 minutes before having to walk or stand in place; that plaintiff could sit for a total of two hours during an eight hour workday; that she needed to rest by laying down or reclining at intervals of less than one hour because of leg pain, shortness of breath and GERD; that she could not balance when standing without assistance, stoop by bending forward at the waist or use her hands for repetitive reaching or grasping. Id. at 1049. Dr. Fullard's RFC assessment also stated that plaintiff

constantly needed to use a cane or walker for walking or standing, would need to miss work more than three times a month for medical treatment and would frequently have to take medical treatments at work that require a recovery time of one hour. Id. at 1049-50.

The Appeals Council adopted the ALJ findings with respect to the issues relating to substantial gainful activity, severity, medical improvement, RFC and credibility through the cessation date of March 1, 2003. Id. at 729-30. The Appeals Council rejected the ALJ finding that plaintiff had past relevant work experience as a teacher's assistant because plaintiff performed such work after the Commissioner found that plaintiff was disabled. Id. at 730.[1] The Appeals Council concluded that plaintiff could not perform her past relevant work because of her impairments, but that she could perform work at the light exertional level such as price marker and office helper. Id.

The Appeals Council found as follows:

1.  The claimant met the special earnings requirements of the Act through March 1, 2003, the date disability ceased.

    The claimant has engaged in substantial gainful activity prior to March 1, 2003. Specifically, the claimant returned to work in 2001 and earned $11,400.50 as a teacher's assistant. However, the record does not show the claimant continued to work beyond 2001 and there is insufficient information to ascertain whether an earlier cessation date can be made based on this work activity (20 CFR 404.1 594(g)(3). Thus, the Appeals Council continues beyond this step in the sequential evaluation process as did the Administrative Law Judge.

2.  The claimant has the following severe impairment: asthma, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

3.  Medical improvement occurred as of March 1, 2003 [20 CFR 404.1 594(b) (1)].

---

[1] The Appeals Council also noted that the ALJ did not consider the State agency RFC assessment, Tr. at 438-445, but that this oversight was not critical because the State agency RFC was not as limiting as the RFC assessments which the ALJ did consider. Id. at 729.

4. The claimant's impairment results in the following limitations on her ability to perform work-related activities: lifting/carrying 10 pounds frequently and 20 pounds occasionally; sitting, standing or walking 6 of 8 hours; occasionally climb stairs or ramps and balance; no climbing ladders, ropes, scaffolds, kneeling crouching or crawling; and no work in extremes of cold or heat, or around wetness, humidity, fumes, odor. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

5. The claimant's subjective complaints are not fully credible for the reasons identified in the body of the hearing decision.

6. The claimant is unable to perform past relevant work as CNA because this job is medium in nature and thus, exceeds the claimant's residual functional capacity for light work.

7. The claimant was 46 years old, which is defined as a younger individual and has at least a high school education. The claimant's past relevant work is semiskilled or skilled. The issue of transferability of work skills is not material in view of the claimant's age and residual functional capacity.

8. If the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and Rule 202.21, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and non-exertional impairments do not allow her to perform the full range of the light exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy, which she could perform.

9. The claimant's disability ceased as of March 1, 2003.

Id. at 730-31.

### **Standard Of Review**

The Court reviews the Appeals Council decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Appeals Council decision is supported by substantial evidence is based upon the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). Thus, to determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will meticulously examine the record as a whole, including anything that may undercut or detract from the Appeals Council's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**Analysis**

This is a cessation of benefits case. Once the Commissioner awards disability benefits, he is required to review the case periodically to determine whether the recipient's condition has medically improved and whether the improvement affects the recipient's ability to work. 20 C.F.R. § 404.1594(a). The Commissioner may terminate benefits if he finds that the physical or mental impairments which formed the basis for award of benefits have ceased, do not exist or are no longer disabling. 42 U.S.C. § 423(f). Such finding must be supported by substantial evidence of medical improvement in plaintiff's impairment which relates to her ability to work, and substantial evidence that plaintiff is able to engage in substantial gainful activity. Id. § 423(f)(1).

To determine whether a recipient's disability has ceased, the Commissioner applies an eight-step sequential evaluation: (1) whether the recipient has engaged in substantial gainful activity; (2) whether the recipient has an impairment or combination of impairments which meets or equals the severity of a listed impairment; (3) whether the recipient has shown medical improvement; (4) if the recipient has

shown medical improvement, whether such improvement is related to the recipient's ability to work; (5) if not, or if such improvement is not related to recipient's ability to work, whether any exceptions to medical improvement apply; (6) if medical improvement is related to the recipient's ability to work, whether all current impairments in combination are severe; (7) considering all current impairments, whether the recipient has sufficient RFC to perform past relevant work; and (8) considering age, education and past work experience, whether the recipient has sufficient RFC to perform other work. 20 C.F.R. § 404.1594(f). If the recipient has sufficient RFC to perform past relevant work or other work, the recipient's disability has ended. Id. § 404.1594(f)(8). In a cessation of benefits case the Commissioner bears the burden of proof at each step of the process. See Hayden v. Barnhart, 374 F.3d 986, 990-91; Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994).

Here, plaintiff argues that the Appeals Council erred by (1) finding that plaintiff's asthma no longer met Listing 3.03B as of March 1, 2003; (2) finding that plaintiff's asthma was her only severe impairment; (3) not considering plaintiff's other impairments in combination with her asthma; and (4) based on erroneous weighing of medical expert testimony, finding that plaintiff had the RFC to perform other work available in the national economy. Because the Court finds error in the Commissioner's consideration of plaintiff's impairments at the RFC stage, it does not address plaintiff's other arguments in detail.

**I.     Plaintiff's Impairments**

Plaintiff argues that the Appeals Council improperly adopted the ALJ RFC finding because (1) the ALJ did not make a proper step six finding, i.e. she did not consider plaintiff's impairments in combination, and (2) substantial evidence does not support the ALJ finding that plaintiff's only impairment was asthma.

### A.     All Impairments In Combination

Plaintiff correctly notes that the ALJ did not make a proper step six finding, and the error stems from the ALJ step two analysis.  At step two, the ALJ is required to determine whether plaintiff has an impairment or combination of impairments that meets or medically equals the criteria of a listed impairment.  20 C.F.R. § 404.1594(f)(2).  Here, the ALJ consideration of plaintiff's impairments is inconsistent.  The ALJ concluded that  plaintiff "did not develop <u>any additional impairment</u> after the CPD through March 1, 2003," Tr. at 953 (emphasis added), yet she went on to address four diagnosed impairments – congestive heart failure, obesity, degenerative joint disease and GERD, <u>id.</u> at 953-54; <u>see</u> 20 C.F.R. § 404.1508 (impairment results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques).

Substantial evidence does not support the conclusion that plaintiff's non-asthma impairments were not medically determinable.  <u>See</u> Tr. at 953-54; 20 C.F.R. § 404.1508.  The ALJ analysis does not even support this conclusion.  <u>See</u> Tr. at 953-54.  The scope of the step two inquiry, the language of the ALJ analysis and the Commissioner's brief all suggest that the ALJ intended to conclude that plaintiff had not developed any additional <u>severe</u> impairments between the CPD and March 1, 2003.  Tr. at 953-54; <u>Brief Of Commissioner</u> (Doc. #22) at 10 (ALJ concluded plaintiff "did not develop any additional severe impairments through March 1, 2003").  Thus, it is unclear whether the ALJ and the Appeals Council decisions considered plaintiff's non-asthma impairments to be medically determinable and whether they considered them in combination in determining whether plaintiff's impairments met a listing at step two or in determining plaintiff's RFC at step six.

At step two, these errors are harmless because the ALJ found that plaintiff's asthma was severe

-9-

and proceeded to the remaining steps of the evaluation.  See Groberg v. Astrue, 415 Fed. Appx. 65, 67 (10th Cir. 2011).  The real problem occurs later in the analysis, where the ALJ is required to consider the effect of all medically determinable impairments, severe or not, in calculating plaintiff's RFC.  See id. (citing 20 C.F.R. §§ 404.1523, 1545).  At step six, the ALJ must "consider all [plaintiff's] current impairments and the impact of the combination of those impairments on [her] ability to function."  Id. 404.1594(f)(6) (emphasis added).  The ALJ did not do so.  Rather, she simply stated that plaintiff's "impairment was severe."  Tr. at 955.  At step two, the ALJ individually considered each of plaintiff's non-asthma impairments and found that they were not "severe," but this does not satisfy the Commissioner's obligation under the regulations to consider all impairments, severe or not, in calculating plaintiff's RFC.   20 C.F.R. § 404.1594; Groberg, 415 Fed. Appx. at 67 (citing 20 C.F.R. §§ 404.1523, 1545).

The ALJ's unclear discussion of plaintiff's impairments and her step six finding (which does not specifically weigh the evidence regarding all plaintiff's current impairments in combination) do not permit court review.  See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  If anything, the ALJ step six finding indicates that the ALJ did not apply the proper legal standard.  See Tr. at 955; 20 C.F.R. § 404.1594(f)(6).  Based upon the record, remand is therefore necessary for the Commissioner to reconsider plaintiff's medically determinable impairment(s), plaintiff's current severe impairment or severe combination of impairments and the limitations that result from plaintiff's medically determinable impairment(s).  See Weigel v. Astrue, 425 Fed. Appx. 706, 710 (10th Cir. 2011).

In addition to these errors, in determining the severity of plaintiff's congestive heart failure and GERD, the ALJ failed to discuss uncontroverted and probative evidence.  The Appeals Council therefore erred in adopting these conclusions.  See Clifton, 79 F.3d at 1009 (in absence of ALJ findings

supported by specific weighing of evidence, Court cannot assess whether relevant evidence adequately supports ALJ conclusion and whether ALJ applied correct legal standards); Fleetwood v. Barnhart, 211 Fed. Appx. 736, 739 (10th Cir. 2007) (ALJ must provide reasoning for decision so judicial review is possible and meaningful).

### B. Congestive Heart Failure

The ALJ found that plaintiff was diagnosed with congestive heart failure "which was acute and transitory" and which "did not result in any significant functional limitations for any 12-month period during the time frame relevant to this cessation determination." Tr. at 953. The ALJ noted that in December of 2002, plaintiff had a cardiac exam which showed "normal left ventricular ejection fraction of 66%." Id. at 343, 954. That exam, which took place on December 7, 2002, showed that plaintiff's heart was generally normal with a "[s]uggestion of left ventricular diastolic dysfunction" and indicated probable hypertensive heart disease or cardiomyopathy. Id. at 343-44.

Five days later, on December 12, 2002, plaintiff underwent a cardiac catherization, which the ALJ did not discuss. Id. at 386; see id. at 953-54. This procedure showed that plaintiff may have moderate coronary artery disease with mild diastolic dysfunction leading to heart failure and that her hemodynamics were normal. Id. at 386. Based on these results, the doctor recommended "[a]ggressive coronary risk factor modification and appropriate medical therapy." Id. at 387. Although the ALJ need not discuss all record evidence she must discuss uncontroverted evidence which she chooses not to rely upon as well as significantly probative evidence which she rejects. Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (citing Clifton, 79 F.3d at 1010).

The results of the cardiac catherization on December 12, 2002, are uncontroverted and significantly probative of plaintiff's heart condition and whether it would limit her physical or mental

-11-

ability to do basic work activities. The procedure showed a number of "normal" results but the doctor concluded that plaintiff may have left ventricular diastolic dysfunction and recommended aggressive coronary risk factor modification. Tr. at 343. Under Clifton, the ALJ was required to discuss and weigh this evidence. 79 F.3d at 1009-10. The ALJ therefore erred in not discussing it. Id. at 1009-10; Carpenter v. Astrue, 537 F.3d 1264, 1265 (10th Cir. 2008) (improper for ALJ to pick and choose among medical reports, using portions of evidence favorable to her position while ignoring other evidence).

### B.     GERD

The ALJ stated that plaintiff was diagnosed with GERD but that "it did not result in any significant functional limitations and did not constitute a severe impairment." Tr. at 954. This is the ALJ's only comment on plaintiff's GERD. See id. at 954. As of December of 2002, plaintiff had a two-year history of chronic GERD. Id. at 346. It caused "forceful retching," and on December 4, 2002, plaintiff was admitted to Providence Medical Center after "several days of nausea and vomiting with blood-tinged vomitus on several occasions," as well as shortness of breath. Id. at 346; id. at 347 (admitted to hospital after seen in emergency room for "severe shortness of breath, weakness, generalized malaise, nasusea, and vomiting," including vomiting blood and "vomiting for a few days").

The ALJ did not discuss any of this evidence or state the basis for her decision. See id. at 346, 954. The conclusory determination that plaintiff's GERD "did not result in any significant functional limitations and did not constitute a severe impairment," id. at 954, is insufficient for the Court to determine whether the ALJ considered relevant medical evidence or applied the appropriate legal standard. Clifton, 79 F.3d at 1009 (bare conclusion beyond meaningful judicial review; ALJ must discuss uncontroverted evidence which she does not rely upon and probative evidence which she rejects); Henderson v. Astrue, 383 Fed. Appx. 700, 702 (10th Cir. 2010) (ALJ erred by not discussing

particular evidence on which he relied and not discussing why he reached conclusion).

The errors noted above require remand and are particularly significant in this case because (1) the Commissioner bears the burden of proof, Bedford v. Barnhart, 43 Fed. Appx. 304, 305 (10th Cir. 2002); Jaramillo, 21 Fed. Appx. at 794 (citing Glenn v. Shalala, 21 F.3d 983, 987 (10th Cir. 1994)); Robbins v. Barnhart, 205 F. Supp. 2d 1189, 1195-99 (D. Kan. 2002); (2) the Commissioner's brief in plaintiff's previous appeal to this Court appeared to admit that plaintiff had severe impairments consisting of asthma, congestive heart failure, musculoskeletal impairments and neck pain, see Report And Recommendation (Doc. #12 in 07-2196) filed May 2, 2008 at 17; Brief Of The Commissioner (Doc. #11 in 07-2196) filed January 9, 2008 at 8-9, 12; and (3) Judge Lungstrum remanded the case for proper consideration of all of plaintiff's medical impairments in combination, Order (Doc. #13 in 07-2196); Report And Recommendation (Doc. #12 in 07-2196) at 17.

## II.     Medical Improvement Related To Ability To Work

In determining medical improvement at step three, it appears that the ALJ glossed over at least two hospitalizations in December of 2002 – she incorrectly stated that the hospitalization beginning on December 4, 2002 lasted for less than 24 hours and did not even mention two subsequent hospitalizations in December of 2002, one of which lasted for six days. See Tr. at 954.[2] The ALJ also improperly relied on Dr. Nathan's testimony that a pulmonary function study performed in September

---

[2] The record reflects the following instances of physician intervention related to plaintiff's asthma within the relevant period as defined by the ALJ: (1) Providence Medical Center from December 4 to December 6, 2002 for acute asthma exacerbation, Tr. at 345; (2) Providence Medical Center from December 7 to December 13, 2002 for dyspnea, i.e. shortness of breath, id. at 330; and (3) Providence Medical Center on December 15, 2002 for difficulty breathing, id. at 366-74. Thus, during the 12-month period prior to March 1, 2003, plaintiff required physician intervention for her asthma on at least three occasions, each in December of 2002. Twice, plaintiff spent 24 hours or more in the hospital.

of 2005 showed that plaintiff's asthma was "under good control" without addressing the equivocal nature of the testimony and contemporaneous contradictory evidence. See id. at 955, 956; id. at 1235 (Dr. Nathan testified that results of pulmonary function study "were . . . really very good which would reflect somebody with asthma which, at that point, at least that particular day, was under good control"); id. at 561, 572, 603 (one month before test, plaintiff was hospitalized twice for total of nine days for asthma and GERD, and spent five days in nursing home to control related symptoms). The Court need not decide whether the ALJ's failure to consider the hospitalizations in December of 2002 constitute harmless error because the Court reverses and remands the Commissioner's decision for other reasons. On remand, in determining whether plaintiff met the criteria in Listing 3.03B, the Commissioner should address all relevant asthma-related physician intervention.

**III.  RFC**

Plaintiff argues that the Appeals Council erred in adopting the ALJ RFC determination because she (1) did not consider evidence of plaintiff's impairments after March of 2003; (2) improperly rejected Dr. Fullard's opinion; and (3) relied on Dr. Nathan's testimony even though he was not qualified to testify regarding plaintiff's non-asthma impairments, he glossed over plaintiffs hospitalizations in December of 2002 and he mischaracterized plaintiff's asthma-related hospitalizations in August of 2005.

On remand, the Commissioner should reconsider the ALJ's seemingly inconsistent application of the relevant time frame and whether the ALJ should have recontacted plaintiff's treating physician to clarify his RFC assessment. See Tr. at 956 (stating no post-cessation medical evidence related back and finding Dr. Fullard's RFC assessment irrelevant for this reason, yet relying on post-cessation pulmonary function test from 2005 which is contradicted by contemporaneous medical records); id. at 1206-08 (ALJ knew Dr. Fullard started treating plaintiff in 2007 even though his RFC stated January

12, 2004); id. at 381-423 (Dr. Fullard's medical records dating back to July 14, 1997); Carpenter, 537 F.3d at 1265 (improper for ALJ to use portions of evidence favorable to her position while ignoring other evidence); 20 C.F.R. § 404.1512(d)-(e) (duty to recontact where medical source contains a conflict or ambiguity); see also Glenn, 21 F.3d at 987 (burden on Commissioner); Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) (ALJ duty to fully develop record).

**IT IS THEREFORE ORDERED** that the Commissioner's decision be **REVERSED** and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings in accordance with this Memorandum And Order.

Dated this 28th day of October, 2011 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge